UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                              )
                                                    )
MICHAEL RICHARD RHODES and                          )    Case No. 6:05-bk-17725-ABB
KATHLEEN FLANIGAN RHODES,                           )    Chapter 7
d/b/a ADEQUATE ENTERPRISES,                         )
                                                    )
            Debtors.                                )

MICHAEL R. RHODES,                                  )
                                                    )
            Plaintiff,                              )    Adv. Pro. No. 6:06-ap-00060-ABB
                                                    )
vs.                                                 )
                                                    )
UNITED STATES OF AMERICA, et al.,[1]                )
                                                    )
            Defendants.                             )
                                                    )

## MEMORANDUM OPINION

This adversary proceeding came on for consideration on June 22, 2006 on the Complaint filed by the Plaintiff, Michael R. Rhodes. The Plaintiff seeks discharge of tax debts owed to the Internal Revenue Service of the United States of America (the "IRS") for tax years 2000 and 2001 pursuant to 11 U.S.C. §§ 523(a)(1), 523(a)(7), 507(a)(3) and 507(a)(8).[2] The issue is whether the Plaintiff willfully attempted in any manner to evade or defeat the tax liability. After reviewing the pleadings and evidence, hearing live testimony and argument, reviewing the proposed findings of fact and conclusions of law after trial (Doc. Nos. 25, 26, 27, 28, 36 and 37), and being otherwise fully advised in the premises, the Court finds the Plaintiff did not attempt to

---

[1] Co-defendant, State of Indiana, stipulated to Judgment on August 8, 2006 (Doc. No. 31).
[2] By stipulation of the parties, the three year requirement of § 523(a)(7) is met, leaving only the issue of whether the Plaintiff tried to evade or defeat taxes pursuant to § 523(a)(1)(C).

willfully evade his taxes. Judgment is due to be entered in favor of the Plaintiff and the tax debts owed to the United States of America for the tax years 2000 and 2001 are dischargeable.

## FINDINGS OF FACT

Plaintiff has a Master's degree in Public Affairs from Indiana University. He worked for a governmental agency assisting mayors and city councils to take advantage of community and economic development block grants. Plaintiff recognized an opportunity to assist companies to benefit from governmental incentives in the form of abatements, tax credits, training and infrastructure grants. He started a consulting business in 1987 assisting companies to locate to areas that supported economic development incentive programs. His business prospered in the 1990's, and his personal and business expenses increased accordingly.

The year 2000 was his most successful year, with an income of $1.8 million. He had no way of anticipating his forthcoming financial devastation. Plaintiff was optimistic about his financial future in May 2000, purchased a luxury vehicle and began making plans for significant home improvements. Plaintiff heavily invested his disposable income in technology stocks, trading largely on margin. The value of his stock portfolio climbed as high as $1.9 million or $3.5 million with margin stock. Plaintiff had always paid his taxes timely, diligently following his accountant's instructions on when to pay the appropriate sums. He believed he had ample income and assets to meet any future tax liability.

Plaintiff did not have sufficient experience or education in stock trading to adequately protect his investments. He used a discount brokerage house for his investments and trades. Plaintiff was not familiar with a stop-loss order which could have mitigated his impending losses. The technology stock sector crashed in October 2000 devastating his stock portfolio and blind-siding the Plaintiff. He had spent approximately $35,000.00 on home improvements at the time of the stock market crash.

Plaintiff's business declined as companies cut back expansion projects. Clients requested fee refunds while others failed to pay Plaintiff after the September 11, 2001 attacks. Some refunds were made. Competition increased, fees were reduced and clients diminished. Plaintiff's 2001 income was less than one-quarter of what he made in the prior year. He could not have anticipated the impact the September 11 attacks would have on his business. Plaintiff was again blind-sided and his business revenues plummeted.[3]

Plaintiff withheld $66,500.00 for the tax year 2000. An extension to file the 2000 tax return was filed on April 15, 2001 and included a payment of $60,000.00, half of which was credited to Plaintiff's 2000 tax liability.[4] The payment was based upon an estimated tax liability for 2000 of $163,000.00. Plaintiff relied on his accountant and believed by making this payment, he had paid more than 110 percent of his 1999 tax liability and was fulfilling his obligations to the IRS. Plaintiff was under the misimpression that the losses in his stock portfolio would be a deductible capital loss which would significantly reduce his 2000 tax liability. The losses were not deductible. Plaintiff believed with his promising income of $1.8 million in the year 2000, he would have sufficient funds to pay his tax liability prior to the stock crash. He was unaware his tax liability was mounting while his income and personal assets were sharply declining.

Plaintiff paid $66,500.00 in withholding towards his 2001 tax liability. He estimated his total tax liability for 2001 at $66,500.00. Plaintiff requested an extension of time to file his 2001 tax return. The IRS granted Plaintiff an extension until October 15, 2002 to file the 2001 income tax return.

Plaintiff met with his accountant of twenty years, Howard Gross, in 2001, several months after substantial nondeductible investment capital losses were incurred. He did not know prior to

---

[3] The business had gross revenues of $428,603.00 in 2001, $146,868.00 in 2002, $203,153.00 in 2003 and $127,987.00 in 2004.

meeting with his accountant that his tax liability was vastly underestimated. He learned at that time his tax liabilities would be substantially greater than the amount withheld for the tax years 2000 and 2001.

Plaintiff's total federal income tax liability for the 2000 tax year was $688,496.00 based upon an adjusted gross income of $1,807,476.00 without the benefit of the investment capital losses.[5] His income had plummeted by the time his tax liability became evident. The IRS applied Plaintiff's withholding credit of $66,500.00 and payment of $30,000.00.[6] Penalties were assessed and interest accrued on the balance due. His income tax liability for 2001 was $143,579.00 based upon an adjusted gross income of $428,603.00.[7] This amount was less than one-quarter of his prior year's taxable income before taking into consideration his substantial losses in the stock market. The IRS applied the $30,000.00 Plaintiff withheld in 2001 to the tax liability. Additional penalties and interest were assessed.[8]

Business revenues were insufficient to fund Plaintiff's ordinary personal and business expenses. Overhead was reduced by laying off employees, subleasing the Plaintiff's office space at a loss, working out of his home and selling business assets. Plaintiff's credit was poor and title to the marital home was transferred into his wife's name to obtain a refinanced mortgage at a more favorable interest rate. The transfer was intended to obtain funds to pay outstanding obligations and was not fraudulent. The closing on the sale of the home netted only $25.46.

---

[4] Plaintiff and his wife originally were going to file a joint return and Plaintiff subsequently chose to file a separate return for the 2000 tax year with one-half of the $60,000.00 payment credited to his 2000 tax liability. (Def's. Ex. 1).

[5] The return was due more than three years before Plaintiff's bankruptcy petition date. The return was timely filed after an extension more than two years before the date of Plaintiff's bankruptcy petition. The 2000 tax debt was assessed more than 240 days before the petition date plus the period during which an offer in compromise was pending plus 30 days.

[6] Doc. No. 28 p. 7 ¶ 19 citing Def's. Ex. 1. The IRS Request for Payment with a due date of December 5, 2001 indicates a credit of a $30,000.00 payment and withholding of $66,500.00 for a total payment and credit of $96,500.00.

[7] The 2001 tax return was due more than three years before the Plaintiff's bankruptcy petition date. The 2001 tax debt was assessed more than 240 days before the Petition Date plus the period during which an offer in compromise was pending plus 30 days. Plaintiff timely filed his tax return for the tax year 2001 after an extension and more than two years before the date of his bankruptcy petition.

[8] The 2001 Application for extension indicates $66,500.00 paid in 2001. The 2001 tax return reflects $30,000.00 withheld in 2001. (Def's Ex. 2).

Plaintiff rented a house less than half the size of the marital home and did not claim a business deduction for working out of the home.

Additional lines of credit were obtained and retirement accounts liquidated. The funds were used for basic business and family expenses, and payment of current years' income tax liabilities. Plaintiff had four vehicles at the time he began incur substantial capital losses. He was leasing a Lexus RX 300 to project the image of a successful professional. He retained the Lexus RX 300 rather than terminating the lease prematurely to avoid incurring a financial penalty. The vehicle was ultimately repossessed in January 2004. The Plaintiff liquidated three of the vehicles by 2003 including a Porsche Boxter, a Lexus and a Honda. The nominal sums received were used for outstanding obligations. Plaintiff incurred expenses related to building his business, including golf and travel expenses, some of which were reimbursed by his traveling companions. These expenses were not incurred in a fraudulent scheme with intent to evade payment of taxes but to generate business.

Plaintiff's wife required medical treatment in September 2002 and the expenses were only partially reimbursed by health insurance. Their oldest daughter suffers from serious health conditions. Her significant medical expenses were being paid by Plaintiff's brother. Plaintiff and his wife provide support to this daughter in the amount of $300.00 per month. He believed it was his responsibility to provide a basic education for his family. His younger daughter is a full-time college student and he has provided her in-state tuition and expenses of approximately $17,000.00 per year. Her attendance at an in-state school was an economical means of obtaining a college education and was a tenable expense for basic education. These expenses were not made with intent to evade payment of taxes.

Plaintiff had been withholding taxes in the sum of $66,500.00 for the year 2000, $30,000.00 for the year 2001 and $29,260.00 for the year 2002.[9] He continued to withhold taxes in the sum of $32,429.00 for the year 2003 and $17,543.00 for the year 2004. Plaintiff paid during the years 2000 through 2004 $175,732.00 in income taxes to the government.[10]

Cash was withdrawn from bank accounts and his business in order to provide access to funds for outstanding obligations. Plaintiff's wife opened a checking account in November 2002 with a significant sum of money. Some of that money was transferred to their joint account permitting payment of outstanding obligations. The transfers from, to and between the accounts were transparent. Plaintiff adequately explained these transfers. They were reasonable and not a fraudulent scheme intended to evade payment of taxes, but were made to ensure access to funds to pay outstanding obligations including taxes. His total income for 2002 was $281,735.00 less than his 2001 total income.[11] His return indicates he owed no taxes for tax year 2002.[12] He continued to withhold taxes for current years.

Plaintiff was concerned about repaying his outstanding tax liability. He knew he had a duty to pay the taxes and had no intention of violating that duty. An offer in compromise (the "Offer") was submitted by the Plaintiff to the IRS in the sum of $150,000.00 based upon the maximum amount Plaintiff could obtain by borrowing funds from his brother. The Offer was received on December 17, 2003. Plaintiff maintained contact with the IRS following submission of the Offer, communicating periodically and providing requested documentation to the IRS. The IRS evaluated the Offer over a period of twenty months. Plaintiff continued to withhold taxes for the tax year 2003 in the sum of $32,429.00. His tax return indicates $2,011.00 due at

---

[9] Def's. Ex. 3.
[10] It would appear $30,000.00 of this sum paid was ultimately credited to the wife's tax return when she filed separately. (Def's. Ex. 1).
[11] *Id.*
[12] Def's. Ex. 3.

the time of filing his return for the 2003 tax year.[13] Plaintiff continued to withhold taxes in the sum of $17,543.00 for the year 2004. The Offer was initially rejected in December 2004. Plaintiff appealed the determination.

Plaintiff and his wife moved to Florida in December 2004. One daughter attends Indiana University and the other daughter is now receiving inpatient medical care in Louisiana. Plaintiff does not own nor has he ever owned any real estate in Florida. The family has no health insurance. His tax return indicates only $1,552.00 due at the time of filing his return for the 2004 tax year based upon his withholding of $17,543.00.[14]

The IRS made a final rejection of the pending Offer in August 2005, and this voluntary petition pursuant to Chapter 7 of the Bankruptcy Code was filed on December 20, 2005. Plaintiff is indebted to the United States for federal income taxes for the years 2000 and 2001.[15] The IRS filed a proof of claim including an unsecured general claim of $1,097,809.74 for the tax years 2000 and 2001.[16] The parties agree all elements of dischargeability of the tax debts for the years 2000 and 2001 have been satisfied with the exception of whether Plaintiff willfully attempted to evade or defeat his federal income taxes.

Plaintiff's continued efforts to pay his taxes with the filing of an extension, withhold taxes for current years, resolve his tax liability with the IRS through the Offer by obtaining a loan commitment from his brother to fund the Offer and his reliance on his accountant demonstrate his good faith intent to satisfy his obligation to pay taxes, and is inconsistent with a willful attempt to evade payment of taxes. Plaintiff's testimony was compelling. He was a forthright and credible witness. Plaintiff adequately explained his intent to pay taxes while

---

[13] Def's. Ex. 4.
[14] Def's. Ex. 5.
[15] There is an unresolved question concerning outstanding tax liability for tax year 2003. This proceeding addresses taxes only for the years 2000 and 2001. To the extent any other tax liability for years other than 2000 and 2001 remain outstanding, the liability is not discharged.
[16] The Proof of Claim dated March 29, 2006 also includes an unsecured priority claim in the sum of $2,520.98 for the 2003 tax year which is not part of this adversary proceeding.

fulfilling his basic obligations. Plaintiff did not live beyond his means while not paying taxes. He did not understate his income. The explanations of his behavior were consistent and plausible. His records were adequate.

Plaintiff is an honest but unfortunate debtor whose actions reflect a good faith effort to fulfill his obligations to the IRS. The United States has not established by a preponderance of the evidence that the totality of the circumstances demonstrate Plaintiff intended or attempted to willfully evade his tax liability.

## **CONCLUSIONS OF LAW**

A typical case of non-dischargeable tax liability pursuant to § 523 of the Bankruptcy Code often involves debtors who fail to file tax returns, pay no withholding, fail to make payroll taxes, or live a lavish lifestyle they cannot afford, all while making no effort to satisfy their tax liability. This is not the case. The Plaintiff ran a successful business, making $1.8 million in the year 2000, had a significant stock portfolio, always filed and paid his taxes on time, carefully followed the advice of his trusted accountant and made reasonable judgments concerning his personal and business expenditures.

He found himself blind-sided by the perfect economic storm created by the technology stock market crash of October 2000, the September 11, 2001 attacks and increased business competition. Neither his past successes nor his optimism could remedy his overwhelming tax liability resulting from large business revenues, without the benefit of deducting significant capital losses. His income had plummeted with little hope of regenerating by the time Plaintiff realized his significant tax liability. His efforts to resolve his liability by obtaining a $150,000.00 loan from his brother to satisfy his tax obligations failed after twenty months of consideration by the government. Plaintiff continued to pay taxes for current years. The facts are not typical.

The liability at issue does not fall within the three-year look-back period of § 507 of the Bankruptcy Code. It is undisputed the Plaintiff filed a return for each of the tax years at issue and the Plaintiff did not file any fraudulent returns. The only relevant Code provision at issue is 11 U.S.C. § 523(a)(1)(C).

A discharge pursuant to § 727 of the Bankruptcy Code does not discharge an individual debtor from any debt for a tax with respect to which the debtor "willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C) (2005). The burden of proof is on the United States to establish by a preponderance of the evidence that the taxes are nondischargeable pursuant to § 523(a). In re Griffith, 206 F.3d 1389, 1396 (11th Cir. 2000), (*citing* Grogan v. Garner, 498 U.S. 279, 287-88 (1991)); In re Passavant, 291 B.R. 879, 882 (M.D. Fla. 2003). Exceptions to discharge are to be strictly construed in favor the debtor. In re Fretz, 244 F.3d 1323, 1327 (11th Cir. 2001). The Bankruptcy Code is intended to provide relief to the "honest but unfortunate debtor." Grogan, 498 U.S. at 286-87 (*quoting* Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)).

The Eleventh Circuit Court of Appeals has issued a number of opinions discussing the applicable standards for bankruptcy courts to follow in interpreting § 523(a)(1)(C) of the Bankruptcy Code. Fretz, 244 F.3d at 1323; Griffith, 206 F.3d at 1389; In re Haas, 48 F.3d 1153, 1158-59 (11th Cir. 1995) (*abrogated in part by* Griffith). The Eleventh Circuit discussed in the Haas and Griffith decisions the dischargeability of a tax debt when a debtor timely files his tax returns, but fails to pay the taxes. Non-payment alone is not enough to deny the debtor a discharge in that circumstance.

The United States must establish non-payment was an intentional and voluntary attempt by the Plaintiff to evade or defeat the tax liability. The government must meet a two-step test. Step one, the conduct test, requires the government to prove the debtor acted in a manner designed to evade or defeat tax liability. Step two, the mental state requirement, examines the

debtor's willfulness. Griffith, 206 F.3d at 1396. As to the mental state test, the government must establish: (1) the debtor had a duty to pay income tax; (2) the debtor knew he had such a duty; and (3) the debtor voluntarily and intentionally violated that duty. Griffith, 206 F.3d at 1396 (*citing* Matter of Bruner, 55 F.3d 195, 197 (5th Cir. 1995)); Matter of Birkenstock, 87 F.3d 947, 952 (7th Cir. 1996). A willful act is one done voluntarily, consciously or knowingly, and intentionally. Sly v. United States, 318 B.R. 194, 203 (N.D. Fla. 2004); Landi v. United States, 316 B.R. 363, 366 (M.D. Fla. 2004).

Certain types of conduct operating as badges of fraud serve as circumstantial evidence of willful intent to evade taxes. These include: (1) the recurrence of understating income for more than one tax year; (2) the understatement of income, (3) implausible or inconsistent explanations of behavior; (4) inadequate records; (5) transfer of assets to a family member; (6) transfer for inadequate consideration; (7) transfer that greatly reduced assets subject to IRS execution; and (8) transfers made in the face of serious financial difficulties. United States v. Spiwak (In re Spiwak), 285 B.R. 744, 751 (S.D. Fla. 2002) (*citations omitted*). No single factor is determinative. The totality of circumstances must be examined. Spiwak, 285 B.R. at 751 (*citing* In re Greene, 207 B.R. 21, 24-25 (Bankr. M.D. Fla. 1997)); In re Zimmerman, 204 B.R. 84, 88 (M.D. Fla. 1996). Nondischargeability is reserved for those whose efforts to evade tax liability are knowing and deliberate, not those debtors who make inadvertent mistakes. Fretz, 244 F.3d at 1330 (*citing* Birkenstock, 87 F.3d at 952).

Plaintiff enjoyed a comfortable lifestyle. He was not concerned about his ability to pay taxes and believed himself to be a man of significant income and assets until the October 2000 stock market crash. His personal finances were severely impacted by the crash, but he remained optimistic about his business prospects based upon his 2000 income of $1.8 million. His choice of a luxury vehicle and expenditures on home improvements were made during a time in which Plaintiff believed he would have the resources to pay taxes. The Plaintiff knew of his duty to

pay income tax. The third element, that he intentionally violated that duty, is absent. The evidence failed to demonstrate an intentional attempt to evade or defeat tax liability.

The September 11 attacks coupled with increased competition in the Plaintiff's niche market contributed to the demise of his business. Gross revenues dropped to $428,603.00 in 2001. Plaintiff learned of his significant tax liabilities after meeting with his accountant in 2001 and realized he had not withheld enough to cover his tax liability. The large stock losses he suffered were not deductible capital losses which would have significantly reduced his tax liability. Plaintiff relied on his accountant and believed he had acted responsibly in following his accountant's instructions.

Plaintiff took measures to reduce his expenses, obtain lines of credit and refinance his home to sustain his business. He layed off employees, subleased office space at a loss, worked out of his home and sold business and personal assets. The transfer of the marital home was not fraudulent nor designed to defeat tax liability. It was a source of funds to pay a variety of outstanding obligations including taxes. The home was ultimately sold and only netted $25.46. The family then rented a house less than half the size of the original home. He did not claim available business deductions for working out of the home which indicates he was not generally attempting to evade tax liability even with available deductions.

Some conduct may be perceived, with the benefit of hindsight, as poor judgment or outright mistakes. Plaintiff chose to maintain a costly lease on a Lexus to portray a professional image. The lease could have been terminated, albeit with financial penalty, but Plaintiff chose to retain it. The car was ultimately repossessed. Plaintiff incurred travel and golf expenses. He adequately explained these expenditures as attempts to build his business and generate income. He continued to pay current withholding taxes for current years.

Personal and family expenses were incurred during his period of financial difficulties. Plaintiff's wife required significant medical treatment, payment of which was only partially

covered by insurance. Plaintiff continued support of his eldest daughter at $300.00 per month, in addition to his brother expending large sums for her medical treatment. Plaintiff's intent was to pay outstanding obligations including taxes. A review of these expenses in isolation of the totality of circumstances could indicate a badge of fraud but merits further evaluation.

Plaintiff was providing basic education for his daughter by paying her tenable in-state tuition of $17,000.00. Plaintiff made a judgment common to many parents similarly situated in less than ideal financial circumstances as to their children's education. The evidence fails to demonstrate the decision to pay his daughter's tuition was made with an intent to evade payment of taxes.

The cases in which courts have found debtors willfully evaded their taxes while paying college tuition for their children are distinguishable. In re Epstein, 303 B.R. 280, 289 (Bankr. E.D.N.Y. 2004) (holding debtor willfully attempted to evade tax obligation where as a successful dentist with substantial income, he failed to file timely tax returns for eight of ten years; made minimal or no payment on large tax debt; never fully paid tax debt for any of the years, using his income to pay for ski vacations, personal trainer and private college tuition); In re Ryan, 286 B.R. 141, 149 (Bankr. W.D. Mo. 2002) (holding debtor engaged in pattern of conduct constituting willful evasion where debtor failed to pay taxes for almost 14 years while buying a condo for the use of his college-age son and paid $30,000 a year in tuition, room and board at a prestigious school); In re Wright, 191 B.R. 291, 295 (S.D.N.Y. 1995) (finding debtor's personal finances were manipulated to thwart collection of taxes barring discharge including payment of tuition for children of ivy league education); In re Griffieth, 209 B.R. 823, 828 (Bankr. N.D.N.Y. 1996) (holding debtors generally owe no duty to supply children with nonessential luxuries such as private education, absent unusual circumstances).

The evidence demonstrates Plaintiff's good faith attempts to achieve resolution with the IRS for outstanding tax liability while making every effort to keep current with tax liability.

There was no evidence of a fraudulent scheme to evade payment of taxes in making the decision to pay these expenses. It would be inequitable based on the totality of circumstances to hold Plaintiff responsible for payment of over $1 million in dischargeable taxes for a possible error in judgment involving payment of medical and educational expenses for his family.

Payment of expenses and economic choices must be evaluated like badges of fraud based on the totality of circumstances. Plaintiff's payment of the family's medical and educational expenses within the totality of circumstances demonstrates he was not living beyond his means and not paying taxes. Plaintiff made tax payments every year from 2000 through 2004, paying his tax liability in full for 2002. He had taxes withheld[17] in the sum of $66,500.00 for the year 2000, $30,000.00 for the year 2001, $29,260.00 for the year 2002, $32,429.00 for the year 2003 and $17,543.00 for the year 2004. He paid $60,000.00 to the IRS with an application for extension in April 2001 (he was credited $30,000.00) and his total income for 2002 was $275,758.00 less than his 2001 total income. His return indicates he owed no taxes for 2002, $2,011.00 for 2003 and $1,552.00 for 2004. Plaintiff's judgment to maintain the Lexus lease, pay medical expenses for his wife, support to an ill child and in-state college tuition were not willful attempts to evade payment of taxes. Plaintiff made judgments concerning payment of outstanding obligations while generating an income and paying taxes, based on professional advice. The evidence demonstrates Plaintiff consistently paid taxes throughout this period of time.

The funds in the wife's checking account and the transfer of funds between her account, the business and their joint account were made to meet ordinary personal and business expenses. The transfers were not fraudulent based upon the totality of circumstances. Plaintiff utilized cash and his wife's account for payment of outstanding obligations while he made an effort to pay his

---

[17] Withholding was made from his own corporation as distinguished from a traditional employer withholding taxes from an employee's pay. Ultimately, the payment was being made by the Plaintiff.

outstanding tax debt. Plaintiff's actions demonstrated continuing efforts to resolve his tax liability while he paid outstanding obligations. The transfers to and between the accounts and the business were not exchanges for inadequate consideration. Payment of these sums was not fraudulent nor an intentional violation or evasion of his duty to pay taxes given the totality of the circumstances.

The Plaintiff initiated an Offer to the IRS after obtaining a loan commitment from his brother in the sum of $150,000.00. Plaintiff's consistent communication with the IRS, cooperation in providing documentation throughout the twenty-month Offer process, and payment of subsequent taxes demonstrate his forthright approach to resolving this issue. Plaintiff has been a compelling witness and demonstrated credibility in his testimony to this Court.

The badges of fraud that may serve as circumstantial evidence of willful intent to evade taxes are evaluated based on the totality of circumstances. Spiwak, 285 B.R. at 751; Zimmerman, 204 B.R. at 88. There was no understatement of income; no implausible or inconsistent explanations of behavior; no inadequate records; the transfer of the marital home to the wife was made for a legitimate purpose; no transfers were made for inadequate consideration except in light of repossessions and liquidations to reduce expenses; the transfers to the wife were adequately explained and the sums expended on his family in the face of serious financial difficulties were reasonable and not made with the intent to evade payment of taxes. Some payments were made due to serious medical conditions and some for basic education. They were honest judgment calls. Plaintiff has adequately explained all of the circumstances which may have appeared to be badges of fraud. He has consistently withheld sufficient taxes in an effort to satisfy tax liability for current years.

The United States has failed to establish by a preponderance of the evidence an intentional and voluntary attempt to evade or defeat tax liability. More factors weigh in favor of

the Plaintiff than the government. The mental state requirement of willfulness has not been satisfied. The evidence suggests exhaustive attempts to resolve payment of his taxes with the IRS while continuing to withhold significant tax sums for current years.

Plaintiff is an honest but unfortunate debtor. Nondischargeability is reserved for those whose efforts to evade tax liability are knowing and deliberate, not those debtors who make mistakes. Plaintiff's actions were sometimes unfortunate judgments with large financial consequences. Plaintiff made efforts to pay his tax liability and basic expenses. The government has failed to establish by a preponderance of the evidence that Plaintiff engaged in affirmative acts constituting a willful attempt to evade or defeat payment of taxes pursuant to 11 U.S.C. § 523(a)(1)(C).

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the tax debts owed to the IRS for tax years 2000 and 2001 are **DISCHARGEABLE** and **JUDGMENT** is due to be entered in favor of the Plaintiff.

DONE AND ORDERED in Orlando, Florida, on the 14th day of September, 2006.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge